**REED SMITH LLP**
**Timothy P. Law, Esq.** (Atty ID 014381995)
**Amy M. Koss, Esq.** (Atty ID 442182024)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA, 19103
Phone: (215) 851-8100
Fax: (215) 851-1420
Email: tlaw@reedsmith.com
          akoss@reedsmith.com

*Attorneys for Plaintiff,*
*Shamrock Technologies, Inc*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SHAMROCK TECHNOLOGIES, INC.**<br>Foot of Pacific Street<br>299 Pacific Street<br>Newark, NJ 07114<br><br>                    Plaintiff,<br><br>v.<br><br>**ILLINOIS UNION INSURANCE COMPANY**<br>436 Walnut Street, P.O. Box 1000<br>Philadelphia, PA, 19106<br><br>                    Defendant. | Civil Action No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Shamrock Technologies, Inc. ("Shamrock"), by its undersigned counsel, Reed Smith LLP, hereby submits its Complaint against Defendant, Illinois Union Insurance Company ("Illinois Union"), and in support thereof, avers as follows:

### NATURE OF ACTION

1. This is an action asserting claims for breach of contract and insurance company bad faith conduct arising out of Illinois Union's refusal to pay amounts due under the "GL Plus" general liability policy with pollution coverage that Shamrock purchased from Illinois Union that

was designed to respond to environmental liabilities, such as those that form the basis for the claim Shamrock has presented to Illinois Union.

## PARTIES

2. Plaintiff Shamrock Technologies, Inc. is a New York corporation, with its principal place of business at Foot of Pacific Street, 299 Pacific Street, Newark, New Jersey, 07114.

3. At all relevant times, Shamrock was the Named Insured under the GL Plus Policy. Shamrock manufactures wax-based and PTFE-based materials that are used in products such as printing inks, coatings, cosmetics, and lubricants.

4. Illinois Union Insurance Company is an insurance company organized and existing under the laws of the Illinois with its principal place of business located at 436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106. At all relevant times Defendant Illinois Union was, and presently is, duly authorized to transact the business of insurance in New Jersey as a domestic surplus lines insurer and is in fact transacting the business of insurance in New Jersey.

5. Illinois Union, a wholly-owned operating company of Chubb, Ltd. ("Chubb"), participates in a pooling arrangement with other Chubb-owned companies in which the risk of loss is shared with those other entities. The handling and adjustment of Shamrock's claim for insurance coverage was performed on behalf of Illinois Union by other Chubb affiliates located in New Jersey. Chubb is among the largest property and casualty insurance conglomerates in the world.

## JURISDICTION AND VENUE

6. Jurisdiction in this matter is proper pursuant to 28 U.S.C. Section 1332 because there is diversity of citizenship between Shamrock on the one hand and Illinois Union on the other hand, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper pursuant to 28 U.S.C. Section 1391 because a substantial part of the events giving rise to this action occurred in this district.

## FACTUAL BACKGROUND

A. **Shamrock Business and Facilities**

8. Shamrock produces specialty micronized powders, dispersions, emulsions, and other compounds such as polytetrafluoroethylene ("PTFE"), a non-toxic micropowder.

9. Per- and poly- fluoroalkyl substances ("PFAS") are a byproduct of PTFE production.

10. For decades, Shamrock has had its corporate headquarters and a manufacturing facility in Newark, New Jersey.

11. In addition to the New Jersey facility, Shamrock owns and operates manufacturing facilities in Henderson, Kentucky, including at the following locations: 3101 Community Drive ("Community Drive"); 5233 Industrial Park Drive ("Industrial Park"), and; 109 North McKinley Street ("McKinley") (together, the "Sites"), which process PTFE from industrial, pre-consumer sources and off-specification products.

12. The Community Drive facility is used to irradiate, bake, mill, and package PTFE. The facility is registered as a hazardous waste generator with the Kentucky Department of Environmental Protections ("KDEP") and is classified as a Conditional Major source under the Kentucky air quality regulations. Shamrock maintains various process and emission controls to reduce particulate matter and emissions at the Community Drive facility.

13. The Industrial Park facility is used to chop, mill, dry, and package PTFE. The facility is classified as a state origin (minor) source under Kentucky air quality regulations and

maintains various process and emission controls to reduce the emission of particulate matter and volatile organic compounds.

14. The McKinley facility is used for milling and packaging PTFE. The facility is a registered source under the Kentucky air quality regulations and maintains various process controls to reduce the emissions of particulate matter.

B. **The GL Plus Policy**

15. Illinois Union sold Shamrock a General Liability Plus insurance policy, bearing Policy No. G28211090 002 with a policy period from January 27, 2018 to April 1, 2019 (the "GL Plus Policy").

16. The GL Plus Policy was issued as a domestic surplus lines insurance policy under the authority of New Jersey statutes, particularly N.J.S.A. 17:22-6.69b and N.J.S.A. 17:22-6.40, et seq.

17. Among other coverages, the GL Plus Policy provides coverage of $1,000,000 per Pollution Condition, with an Aggregate Pollution Limit of $2,000,000, in excess of a self-insured retention of $25,000 Each Pollution Condition.

18. Under Insuring Agreement D.3 "On-Site and Off-Site Government Action Insuring Agreement," Illinois Union agreed to pay "those sums the insured becomes legally obligated to pay as a result of a 'government action' arising out of a 'pollution condition' on, at, under or migrating from a 'covered location'." This provision also provides that Illinois Union will "have the right and duty to defend the insured against any 'government action'."

19. "Government action" is defined in the GL Plus Policy as "an order or directive that requires the insured to incur 'remediation costs', or liability imposed, by any federal, state,

provincial, municipal or other local government agency or body acting under 'environmental laws' governing the liability of an insured with respect to actual or alleged 'pollution conditions'."

20. "Remediation costs" is defined in the GL Plus Policy as "reasonable expenses incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize 'pollution conditions' to the extent required by 'environmental law'."

21. "Environmental law" is defined in the GL Plus Policy as "any federal, state, provincial, municipal or other local laws, statutes, ordinances, rules, guidance, documents, regulations, and all amendments thereto, including state voluntary cleanup or risk-based corrective action guidance, governing the liability or responsibilities of the insured with respect to 'pollution conditions'."

22. "Pollution condition" is defined in the GL Plus Policy, in relevant part, as "discharge, dispersal, release, escape, migration or seepage of any solid, liquid, gaseous or thermal irritant, including smoke, soot, vapors, fumes, acids, alkalis, chemicals, hazardous substances, hazardous materials, or waste materials, on, in, into or upon land and structures thereupon, the atmosphere, surface water or groundwater."

23. "Covered location" is defined in the GL Plus Policy as "the locations identified in item 9.b of the Declarations or the Schedule of Covered Locations attached to this policy."

24. The GL Plus Policy lists Shamrock as the Named Insured, and all three of the Sites are listed in the Schedule of Covered Locations.

C. **The Umbrella Policy**

25. Illinois Union sold Shamrock a Commercial Umbrella Liability Plus policy, bearing Policy No. G282111070 002 with a policy period from January 27, 2018 to January 27,

2019 (the "Umbrella Policy"), providing an additional $17,000,000 in coverage limits for pollution conditions in excess of the limits of the GL Plus Policy.

26. The Umbrella Policy was issued as a domestic surplus lines insurance policy under the authority of New Jersey statutes, particularly N.J.S.A. 17:22-6.69b and N.J.S.A. 17:22-6.40, et seq.

27. The Umbrella Policy follows form to the underlying GL Plus Policy (together, the "Policies").  Upon the exhaustion of the limits of the GL Plus Policy, Illinois Union has the duty to defend and pay loss under the Umbrella Policy.

28. The Umbrella Policy's Follow Form Coverage Endorsement provides:

> Notwithstanding anything in the policy to the contrary, when the "underlying insurance" is provided under a Chubb GL Plus – Insurance Coverage policy, it is agreed that the definitions, terms, conditions, limitations and exclusions of the "underlying insurance" in effect as of the inception of this policy apply to this coverage, subject to the premium, limits of insurance and policy period of this policy.

D.   **Shamrock's Environmental Assessment and Subsequent Involvement with KDEP**

29. In connection with a potential business transaction, Shamrock initiated an environmental assessment of the Sites in August 2018. The assessment consisted of soil and groundwater sampling.

30. Shamrock reported the discovery of PFAS in the samples in a meeting with KDEP on December 7, 2018.

31. Shamrock and KDEP discussed potential remediation solutions required by environmental regulations to control, contain, and clean up the PFAS pursuant to Ky. Rev. Stat. § 224.

32. Shamrock provided notice to Illinois Union on January 25, 2019 regarding its interactions with KDEP and the conditions found at the Sites, seeking coverage for the pollution conditions under the GL Plus Policy and Umbrella Policy.

33. Illinois Union refused to provide a defense to Shamrock at that time concerning its negotiations with KDEP.

34. Without any assistance from Illinois Union, Shamrock continued its negotiations with KDEP over the next several months to mitigate the extent of any losses or damages requiring remediation at the Sites.

35. On November 1, 2019, to mitigate any further costs, reduce and remediate any and all property damage occurring at the Sites, and avoid any potential legal action initiated by KDEP, Shamrock entered into an Agreed Order with KDEP pursuant to Ky. Rev. Stat. § 224 which laid out Shamrock's remediation efforts to date and set a plan for further remediation efforts (the "Agreed Order"). The Agreed Order set forth a process for investigating and resolving Shamrock's compliance obligations and liability under the state statute to remediate and remedy property damage caused by pollutants. On September 20, 2021, KDEP approved a proposed work plan for Off-Site Characterization Work (the "Phase 2 Plan").

36. Thereafter, Shamrock began implementation of the Phase 2 Plan at its own cost and expense because Illinois Union continued to refuse to provide coverage for the remediation of the property damage at the Sites.

**E.     Shamrock's Remediation and Defense Costs are Covered by the GL Plus Policy**

37.     Shamrock's liabilities under the Agreed Order are a "liability imposed, by any federal, state, provincial, municipal, or other local government agency or body acting under 'environmental laws' governing the liability of an insured with respect to actual or alleged 'pollution conditions'" falling squarely within the definition of "government action" in the GL Plus Policy.

38.     The Agreed Order and the Phase 2 Plan are part of a "government action" as defined by the GL Plus Policy. Shamrock was required to incur remediation costs due to liability imposed upon Shamrock by a state government agency (KDEP) because of property damage at the Sites.

39.     Shamrock's "remediation costs" were reasonable and were required by "environmental law" as defined by the GL Plus Policy.

40.     The remediation costs, at each stage, were incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize the presence of PFAS and remediate property damage at the Sites.

41.     KDEP imposed liability on Shamrock based upon Shamrock's alleged violation of several provisions of the Kentucky Revised Statutes among other environmentally related rules, guidance, regulations, ordinances and documents.

42.     The presence of PFAS at the Sites constitutes a "pollution condition" under the GL Plus Policy, as it is a waste material, by-product of Shamrock's production of PTFE, which discharged, dispersed, released, escaped, migrated or seeped into and upon the land and groundwater at the Sites.

**F.      Illinois Union's Duties Under the GL Plus Policy and New Jersey Law**

43.     New Jersey substantive law applies to the interpretation of the Policies, which were sold to Shamrock in New Jersey under the New Jersey surplus lines law.

44.     New Jersey law requires that insurance companies attempt in good faith to effectuate prompt, fair, and equitable coverage decisions and that they not compromise the right of the insured to receive the full benefits of the insurance policy.

45.     Shamrock provided notice of its claim to Illinois Union on January 25, 2019; yet, it was not until April 28, 2020 (fifteen months after Shamrock's initial notice of its claim under the GL Plus Policy and Umbrella Policy) that Illinois Union issued a coverage decision.

46.     By not promptly and properly responding to Shamrock's claim, Illinois Union waived its rights or is estopped from asserting them.

47.     When Illinois Union did finally provide its coverage position, Illinois Union admitted that coverage was potentially implicated under the GL Plus Policy's Insuring Agreement Section D.3, but incorrectly denied coverage for costs associated with "pollution conditions" at the Community Drive facility.

48.     Illinois Union neither assumed the defense of Shamrock, as it was required to do, nor properly reserved its rights to deny coverage.

49.     Shamrock submitted the proposed Phase 2 Plan to Illinois Union for its assistance in responding to the property damage and pollution conditions at the Sites.  Again, Illinois Union improperly denied coverage or failed to properly assume and comply with its obligations under the GL Plus Policy.

50.     Illinois Union repeatedly refused to reconsider its denials of coverage, even after requesting and receiving voluminous documents from Shamrock relating to the claim making clear

that the Agreed Order involved remediating property damage and pollution conditions that trigger the coverage under the Policies.

51.     Shamrock has substantially performed or otherwise satisfied all conditions precedent to bringing this action and obtaining coverage pursuant to the Policies and applicable law, or alternatively, Shamrock has been excused from performance by Illinois Union's acts, representations, conduct, or omissions.

52.     Shamrock purchased the GL Plus Policy with specific provisions extending coverage for "pollution conditions" reasonably expecting to be insured against pollution-related liabilities, such as those incurred at the Sites.

53.     Likewise, Shamrock purchased the Umbrella Policy to follow form to that broad pollution coverage, providing millions of dollars of additional protection for its potential pollution liabilities.

54.     Illinois Union has failed completely in its duties to defend, investigate, and pay for the covered liabilities.

55.     Illinois Union participates in reinsurance pooling arrangements with affiliates (including with insurance companies and affiliates located in New Jersey). The claim decisions were made on behalf of Illinois Union by Chubb affiliates located in New Jersey and by, or in consultation with, Illinois Union's (or Chubb's) outside legal counsel located in New Jersey.

56.     Illinois Union is fully responsible for the actions and inaction of its affiliates made on its behalf in relation to the Policies.

## COUNT I
## BREACH OF CONTRACT

57. Shamrock incorporates by reference the allegations contained in the above-stated paragraphs.

58. In return for premiums paid, Illinois Union sold Shamrock the Policies, in which Illinois Union promised to pay for covered losses up to the applicable Limit of Liability.

59. At all relevant times, Shamrock complied with the requisite duties, obligations, and conditions precedent under the Policies.

60. Illinois Union breached the GL Plus Policy and the Umbrella Policy, and Illinois Union refused to defend or pay for any of Shamrock's covered losses.

61. As a direct and proximate result of Illinois Union's breaches, Shamrock has been deprived of the benefits of insurance coverage for which it paid substantial premiums and has suffered substantial damage.

WHEREFORE, Shamrock requests judgment in its favor as to Count I as follows:

a) All compensatory and consequential damages suffered by Shamrock caused by Illinois Union's breach of the Policies;

b) Prejudgment and post-judgment interest;

c) Shamrock's attorneys' fees and costs in prosecuting this action;

d) Costs of court; and

e) Such other and further relief as the Court deems just and proper.

## COUNT II
## BAD FAITH

62. Shamrock incorporates by reference the allegations contained in the above-stated paragraphs.

63. Illinois Union owed Shamrock a duty of good faith and fair dealing in the performance of its duties under the Policies. Illinois Union's duty of good faith and fair dealing included an obligation to assume promptly its duty to defend the claim, work with Shamrock to investigate and defend the claim in good faith, and to settle any aspect of the claim where liability was reasonably clear.

64. Illinois Union owed Shamrock a duty to broadly interpret its insurance coverage consistent with the reasonable expectations of its policyholder and not to do anything to injure the rights of Shamrock to receive the benefits of the Policies.

65. Illinois Union is not permitted to place its own interests above those of its policyholder, Shamrock.

66. In response to Shamrock's request that Illinois Union honor its obligations under the Policies and provide coverage for remediation costs and provide a defense to the claims of the KDEP, Illinois Union engaged in a pattern of bad faith conduct designed to evade its duties under the Policies that has included, among other things:

   a. Denying coverage for Shamrock's claims despite clear policy language providing coverage for remediation costs and defense costs;

   b. Misrepresenting pertinent facts and GL Plus Policy provisions relating to the coverage at issue;

   c. Failing to acknowledge and act promptly upon written communications with Shamrock;

   d. Not attempting in good faith to effectuate a prompt, fair, and equitable coverage decision;

   e. Failing to promptly provide a reasonable explanation of the basis in the Policies

in relation to the facts or applicable law for denial of the claim;

f. Not attempting to effectuate prompt, fair, and equitable settlement of Shamrock's claim where liability was clear, and;

g. Considering its own financial interests over those of Shamrock.

67. Illinois Union had no reasonable basis on which to deny coverage and fail to perform its duties in relation to Shamrock's claim and acted knowingly or in reckless disregard of its lack of reasonable basis.

68. At all times relevant to this Complaint, Illinois Union has placed its own interests ahead of its policyholder's interests, to the detriment of Shamrock.

69. As a result of Illinois Union's refusal to honor its obligation to act in good faith with respect to Shamrock's requests for coverage of remediation costs and to provide a defense, Shamrock has incurred costs and expenses, including defense expense, investigation costs, and attorneys' fees and costs in connection with its pursuit for insurance coverage.

WHEREFORE, Shamrock requests judgment in its favor as to Count II as follows:

a) All compensatory and consequential damages suffered by Shamrock caused by Illinois Union's bad faith conduct;

b) Prejudgment and post-judgment interest;

c) Shamrock's attorneys' fees and costs in prosecuting this action;

d) Exemplary and/or punitive damages in an amount allowable by law;

e) Costs of court; and

f) Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Shamrock hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated:  January 6, 2025

*/s/ Amy M. Koss*
**Timothy P. Law, Esq.** (Atty ID 014381995)
**Amy M. Koss, Esq.** (Atty ID 442182024)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA, 19103
Phone: (215) 851-8100
Fax: (215) 851-1420
Email: tlaw@reedsmith.com
         akoss@reedsmith.com

*Attorney for Plaintiff,*
*Shamrock Technologies, Inc.*

## **CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

The undersigned attorney for Plaintiff certifies that the matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration or administrative proceeding.

I certify that the foregoing statement made by me is true to the best of my knowledge, information and belief. I am aware that if the foregoing statement made by me is willfully false, I am subject to punishment.

Dated: January 6, 2025                                          *s/ Amy M. Koss*
                                                                                   Amy M. Koss, Esq.