<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHAMROCK TECHNOLOGIES, INC., *Plaintiff*, v. ILLINOIS UNION INSURANCE COMPANY, *Defendant*. | Civil Action No. 25-00105 **OPINION** December 17, 2025 |

**SEMPER**, District Judge.

The current matter comes before the Court on Defendant Illinois Union Insurance Company's partial motion to dismiss Count Two of Plaintiff Shamrock Technologies, Inc.'s Complaint (ECF 1, "Compl."). (ECF 8, "Def. Mot.") Plaintiff opposed the motion. (ECF 13, "Opp.") Defendant filed a reply. (ECF 15, "Reply.") The Court has decided this motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendant's partial motion to dismiss is **GRANTED**, and Count Two of the Complaint is dismissed without prejudice.

**I.    <u>FACTUAL BACKGROUND AND PRODUCURAL HISTORY</u>**[1]

This suit arises from an insurance coverage dispute between Plaintiff and Defendant. (Compl. ¶ 1.)

---

[1] The facts and procedural history are drawn from the Complaint and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the Complaint are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Plaintiff is a New York corporation, with its principal place of business in Newark, New Jersey. (*Id.* ¶¶ 2, 10.) Defendant is an insurance company organized under the laws of Illinois, with its principal place of business in Philadelphia, Pennsylvania and which transacts in the business of insurance in New Jersey. (*Id.* ¶ 4.) Defendant is a wholly-owned operating company of Chubb, Ltd. ("Chubb"). (*Id.* ¶ 5.) Chubb affiliates in New Jersey, on the behalf of Defendant, handled and adjusted Plaintiff's claim for insurance coverage in dispute here. (*Id.*)

Plaintiff's business involves producing and processing specialty micronized powders, dispersions, emulsions, and other compounds, such as polytetrafluoroethylene ("PTFE"), at three manufacturing facilities located in Henderson, Kentucky: 3101 Community Drive ("Community Drive"); 5233 Industrial Park Drive ("Industrial Park"); and 109 North McKinley Street ("McKinley") (together, the "Sites"). (*Id.* ¶¶ 8, 11; *see also id.* ¶¶ 12-14.) PTFE production produces per- and poly- fluoroalkyl substances ("PTAS") as a byproduct. (*Id.* ¶ 9.) Community Drive is registered as a hazardous waste generator with the Kentucky Department of Environmental Protections ("KDEP"). (*Id.* ¶ 12.)

### A. The Policies

Defendant sold Plaintiff a General Liability Plus policy ("GL Plus Policy") with a policy period from January 27, 2018 to April 1, 2019 and a Commercial Umbrella Liability Plus policy ("Umbrella Policy") with a policy period from January 27, 2018 to January 27, 2019. (*Id.* ¶¶ 15, 25.) The GL Plus Policy provides "coverage of $1,000,000 per Pollution Condition, with an Aggregate Pollution Limit of $2,000,000, in excess of a self-insured retention of $25,000 Each Pollution Condition." (*Id.* ¶ 17.) The Umbrella Policy provides "an additional $17,000,000 in coverage limits for pollution conditions in excess of the limits of the GL Plus policy." (*Id.* ¶ 25.) The Umbrella Policy follows form to the GL Plus Policy (together, the "Policies"). (*Id.* ¶¶ 27-28.)

Upon the exhaustion of the limits of the GL Plus Policy, Illinois Union has the duty to defend and pay loss under the Umbrella Policy. (*Id.* ¶ 27.)

Provision D.3 of the GL Plus Policy states that Defendant agrees to pay "those sums [Plaintiff] becomes legally obligated to pay as a result of 'government action' arising out of a 'pollution condition' on, at, under or migrating from a 'covered location,'" and provides that Defendant will "have the right and duty to defend the insured against any 'government action.'" (*Id.* ¶ 18.) The GL Plus Policy lists Plaintiff as the Named Insured, and the Sites are listed in the Schedule of Covered Locations. (*Id.* ¶ 24.) The GL Plus Policy includes the following definitions:

- "Government action" is defined as "an order or directive that requires the insured to incur 'remediation costs', or liability imposed, by any . . . government agency or body acting under 'environmental laws' governing the liability of an insured with respect to actual or alleged 'pollution conditions'." (*Id.* ¶ 19.)
- "Remediation costs" is defined as "reasonable expenses incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize 'pollution conditions' to the extent required by 'environmental law'." (*Id.* ¶ 20.)
- "Environmental law" is defined as "any federal, state, provincial, municipal or other local laws, statutes, ordinances, rules, guidance, documents, regulations, and all amendments thereto, including state voluntary cleanup or risk-based corrective action guidance, governing the liability or responsibilities of the insured with respect to 'pollution conditions'." (*Id.* ¶ 21.)
- "Pollution condition" is defined as, in relevant part, "discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal irritant . . . on, in, into or upon land and structures thereupon, the atmosphere, surface water or groundwater." (*Id.* ¶ 22.)
- "Covered location" is defined as the locations listed in "the Schedule of Covered Locations[.]" (*Id.* ¶ 23.)

### B. Agreed Order and Phase 2 Plan

In August 2018, Plaintiff initiated an environmental assessment of the Sites in connection with a potential business transaction. (*Id.* ¶¶ 29-30.) The environmental assessment revealed PFAS in groundwater and soil samples. (*Id.*) Plaintiff reported these findings to KDEP on December 7, 2018. (*Id.* ¶ 30.) On January 25, 2019, Plaintiff provided notice to Defendant regarding the communications with KDEP and sought coverage for the pollution conditions under the Policies.

(*Id.* ¶ 32.) Defendant allegedly did not provide a defense to Plaintiff concerning Plaintiff's negotiations with KDEP for potential remediation solutions. (*Id.* ¶¶ 31, 33.) After months of negotiations, on November 1, 2019, Plaintiff entered into an "Agreed Order" with KDEP pursuant to Ky. Rev. Stat. § 224. (*Id.* ¶¶ 34-35.) The Agreed Order established a process for "investigating and resolving [Plaintiff's] compliance obligations and liability under [Ky. Rev. Stat. § 224] to remediate and remedy property damage caused by pollutants." (*Id.* ¶ 35.) On April 28, 2020, Defendant issued a coverage decision and denied coverage for costs associated with "pollution conditions" at the Community Drive facility. (*Id.* ¶¶ 45, 47.) On September 20, 2021, KDEP approved a proposed work plan for Off-Site Characterization Work (the "Phase 2 Plan") to remediate and remedy property damage caused by pollutants, and Plaintiff began implementation of the Phase 2 Plan at its own expense. (*Id.* ¶¶ 35-36.) Plaintiff submitted the proposed Phase 2 Plan to Defendant to ask for assistance in responding to the property damage. (*Id.* ¶ 49.) Defendant again denied coverage and then repeatedly refused to reconsider its denials of coverage, even after receiving documents from Shamrock related to the claim. (*Id.* ¶¶ 49-50.)

Plaintiff alleges that its liabilities under the Agreed Order and the Phase 2 Plan fall directly within the definition of "government action" stated in the GL Plus Policy, and that Defendant was required to incur the reasonable remediation costs imposed upon Plaintiff by KDEP under environmental law. (*Id.* ¶¶ 37-41.) Additionally, Plaintiff alleges that the PFAS presence at the Sites constituted a "pollution condition" as defined by the GL Plus Policy. (*Id.* ¶ 42.) Plaintiff further alleges that Defendant never assumed the defense of Plaintiff nor properly reserved its rights to deny coverage (*id.* ¶ 48) and that it "failed completely in its duties to defend, investigate, and pay for the covered liabilities." (*Id.* ¶ 54.)

Plaintiff filed its Complaint on January 6, 2024. (Compl.) Count One of the Complaint alleges that Defendant committed a breach of contract. (*Id.* ¶¶ 57-61.) Count Two alleges that Defendant engaged in bad faith. (*Id.* ¶¶ 62-69.) Defendant moved to dismiss Count Two of the Complaint on March 10, 2025 pursuant to Fed. R. Civ. P. 12(b)(6), alleging that Plaintiff's bad faith claim is duplicative of Plaintiff's breach of contract claim. (Def. Mot. at 4.) On March 21, 2025, Plaintiff filed an opposition to Defendant's partial motion to dismiss. (Opp.) On March 31, 2025, Defendant filed a reply. (Reply.)

**II.   LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not

5

compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## III.    ANALYSIS

Defendant asserts that Count Two of the Complaint, bad faith, is duplicative of Count One, breach of contract, and accordingly asks this Court to dismiss Count Two with prejudice. (Def. Mot. at 7; Reply at 3-5.) Plaintiff argues that it properly pled bad faith in a separate count and that its bad faith claim is not duplicative of its breach of contract claim. (Opp. at 1, 9-12.)

To state a claim for bad faith under New Jersey law, a plaintiff must allege the insurer "(1) did not have a 'fairly debatable' reason for its failure to pay the claim, and (2) that the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim." *Snowden v. Standard Ins. Co.*, No. 23-2493, 2024 WL 1154471, at *3 (D.N.J. Mar. 18, 2024) (citing *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 Fed. App'x. 594, 599 (3rd Cir. 2004)). Under the "fairly debatable" standard, a plaintiff must establish "as a matter of law a right to summary judgment on the substantive claim," even at the motion to dismiss stage. *Pickett v. Lloyds*, 621 A.2d 445, 453-54 (N.J. 1993) (internal citations omitted); *see also Robeson Indus. Corp. v. Hartford Accident & Indem. Co.*, 178 F.3d 160, 169 (3d Cir. 1999) (finding that plaintiff did not establish an absence of a reasonable basis for denying coverage as a right to summary judgment); *Snowden*, 2024 WL 1154471, at *3 ("[A] plaintiff who cannot [establish a right to summary judgment on the substantive claim] is not entitled to assert a claim for bad faith—including at the motion to dismiss

stage."). Thus, "if there are material issues of disputed facts as to the underlying benefits claim, an insured cannot maintain a cause of action for bad faith." *Fuscellaro v. Combined Ins. Grp., Ltd.*, No. 11-723, 2011 WL 4549152, at *5 (D.N.J. Sep. 29, 2011).

As for claims of unreasonable delay, "[a] plaintiff may also demonstrate an insurer's bad faith when the insurer unreasonably delays the processing of a valid claim, and the insurer knows or recklessly disregards the fact that the delay is unreasonable." *Tripodi v. Universal N. Am. Ins. Co.,* No. 12–1828, 2013 WL 6903944, at *10 (D.N.J. Dec. 31, 2013) (citing *Pickett,* 621 A.2d at 454). "In a delay case, '[b]ad faith is established by showing that no valid reasons existed to delay processing the claim and the insurance company knew or recklessly disregarded the fact that no valid reasons supported the delay.'" *Granelli v. Chicago Title Ins. Co.*, 569 F. App'x 125, 131-32 (3d Cir. 2014) (quoting *Pickett*, 621 A.2d at 457). "Although applied in slightly different circumstances, the 'fairly debatable' and 'unreasonable delay' tests are 'essentially the same.'" *Onex Credit Partners, LLC v. Atrium 5 Ltd.*, No. 13-5629, 2014 WL 4798758, at *8 (D.N.J. Sept. 26, 2014) (quoting *Johnson v. Liberty Mut. Ins. Co.,* No. 10–0494, 2010 WL 2560489, at *2 (D.N.J. June 24, 2010)).

Here, the Court finds that Plaintiff has not pled sufficient facts to support a claim of bad faith.[2] Plaintiff's bad faith claim primarily relies on a single paragraph in the Complaint (Compl. ¶ 66), comprised of multiple sub-parts, which states in relevant part:

> Illinois Union engaged in a pattern of bad faith conduct designed to evade its duties under the Policies that has included, among other things: (a) Denying coverage for Shamrock's claims despite clear policy language providing coverage for remediation costs and defense costs; (b) Misrepresenting pertinent facts and GL Plus Policy provisions relating to the coverage at issue; (c) Failing to acknowledge and act promptly upon written communications with Shamrock; (d) Not attempting in good faith to effectuate a prompt,

---

[2] The Court treats Plaintiff's bad faith claim as tantamount to a breach of the implied covenant of good faith and fair dealing. *See Senft v. Fireman's Fund Ins. Co.*, No. 14-07805, 2015 WL 2235098, at *3 (D.N.J. May 12, 2015) ("The New Jersey Supreme Court's treatment of bad faith claims demonstrates that they are the equivalent of claims for breach of the implied covenant of good faith and fair dealing.").

7

fair, and equitable coverage decision; (e) Failing to promptly provide a reasonable explanation of the basis in the Policies in relation to the facts or applicable law for denial of the claim; (f) Not attempting to effectuate prompt, fair, and equitable settlement of Shamrock's claim where liability was clear, and; (g) Considering its own financial interests over those of Shamrock.

(Compl. ¶ 66(a)-(g).)

The Court agrees with Defendant that the allegations set forth in the Compl. ¶ 66(a), (b), (d), (f), and (g) are improperly premised on the same conduct underlying the breach of contract claim. Plaintiff is correct that a breach of contract claim and bad faith claim are separate causes of action. (Opp. at 12-14.) However, "under New Jersey law, '[a] breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of contract action.'" *Fox v. State Farm Fire & Cas. Co.*, No. 22-18131, 2021 WL 4398740, at *8 (D.N.J. Sept. 24, 2021) (quoting *Irene v. Michael Whaley Interiors, Inc.*, No. 19-14998, 2020 WL 759573, at *2 (D.N.J. Feb. 13, 2020) and collecting cases). In other words, a plaintiff cannot pursue both a breach of contract and bad faith claim when they are "rooted in the same allegations." *Lewis v. Gov't Emps. Ins. Co.*, No. 18-05111, 2019 WL 1198910, at *3 (D.N.J. Mar. 14, 2019); *see also Veyhl v. State Farm Fire & Cas. Co.*, No. 21-10112, 2021 WL 6062304, at *3 (D.N.J. Dec. 22, 2021) ("Where breach of the implied covenant of good faith and fair dealing claims lack a distinct factual predicate, courts may dismiss them at the motion to dismiss stage") (citations omitted).

Although worded slightly differently, at base the allegations in paragraph 66(a), (d), (f), and (g) of the Complaint are complaints that the Defendant did not perform under the Policy. *See Petri v. Drive N.J. Ins. Co.*, No. 21-20510, 2022 WL 4483437, at *6 (D.N.J. Sep. 26, 2022) (finding that plaintiffs could not maintain a duplicative bad faith claim where they used different language in the complaint to describe the same conduct); *Lewis*, 2019 WL 1198910, at *3 ("Given that these two claims clearly arise from the same facts, this Court finds they are duplicative."); *McMillian v.*

8

*GEICO Indem. Co.*, No. 23-01671, 2023 WL 7039535, at *5 (D.N.J. Oct. 26, 2023) (dismissing claim for breach of implied covenant of good faith and fair dealing where claim "d[id]not rest on separate and distinct allegations from the breach of contract claim" and did not "differ from the alleged literal violation of the express contract.") (internal quotations omitted).

The Court finds, however, that Plaintiff's allegations that Defendant was unreasonably delayed in responding to Plaintiff's claim are not necessarily duplicative of Plaintiff's underlying breach of contract claim. (*See* Compl. ¶¶ 66(c), (e) (alleging that Defendant failed to "acknowledge and *act promptly* upon written communications with Shamrock" and failed to "*promptly* provide a reasonable explanation of the basis in the Policies in relation to the facts or applicable law for denial of the claim"; *id.* ¶ 45 (alleging that it took Illinois Union fifteen months after Shamrock's initial notice of its claim under the GL Plus Policy and Umbrella Policy to issue a coverage decision) (emphases added).) An unreasonable processing delay claim is separate from an underlying breach of contract claim. *See Hinsinger v. Conifer Ins. Co.*, No. 20-14753, 2022 WL 17820259, at *8 (D.N.J. Dec. 20, 2022) (citing *Pickett*, 131 N.J. at 470). However, Plaintiff's allegations in support of its unreasonably delay claim are still deficient. "[N]either negligence nor mistake is sufficient to show bad faith—rather, a plaintiff must demonstrate 'that the insurer's conduct is unreasonable and the insurer knows that the conduct is unreasonable, or that it recklessly disregards the fact that the conduct is unreasonable.'" *Enright v. Farm Family Cas. Ins. Co.,* No. 03–4850, 2005 WL 3588485, at *8 (D.N.J. Dec. 29, 2005) (quoting *Pickett*, 131 N.J. at 473). Here, Plaintiff did not allege that the insurer knew its processing delay was unreasonable or that it recklessly disregarded its unreasonable conduct. Plaintiff's conclusory allegations that Defendant did not promptly address Shamrock's claim fails to state a claim upon which relief can be granted.

9

*See Snowden*, 2024 WL 1154471, at *3 (dismissing bad faith claim because allegations in support were conclusory).

Based on the foregoing, the Court concludes that Plaintiff fails to meet its burden of plausibly pleading that Defendant lacked a fairly debatable reason for its failure to pay the claim or was unreasonably delayed in the payment of benefits.

## IV. CONCLUSION

For the reasons stated above, Defendant's partial motion to dismiss Count Two of the Complaint is **GRANTED**. Count Two of the Complaint is dismissed without prejudice. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:       Clerk
cc:         Leda D. Wettre, U.S.M.J.
            Parties